IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTIC DIVISION

| | | |
|---|---|---|
| FOUNDATION FOR LOST BOYS AND GIRLS OF SUDAN, INC., NATHANIEL CHOL NYOK, BOL DENG BOL, ET AL., | ) ) ) ) | Case No. 1:15-cv-00509-LMM |
| | ) | Hon. Leigh Martin May |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ALCON ENTERTAINMENT, LLC, ET AL., | ) ) ) | |
| Defendants. | ) ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS ALCON ENTERTAINMENT, LLC, IMAGINE
ENTERTAINMENT, LLC, GOOD LIE PRODUCTIONS LLC,
BLACK LABEL MEDIA, LLC, RELIANCE BIG
ENTERTAINMENT (US), INC., AND MARGARET NAGLE**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ............................................................................. 1

STATEMENT OF FACTS ..................................................................... 7

ARGUMENT ................................................................................ 11

I.   PLAINTIFFS' CONTRACT-BASED CLAIMS SHOULD BE
     DISMISSED (COUNTS I, VII)........................................................ 11

     A.   Plaintiffs' Contract Claim Fails Because the Lost Boys'
          Counterparty, Mr. Newmyer, is Deceased. ................................. 11

     B.   The Contract Claim Fails Because There Is No Written
          Assignment to the Foundation............................................. 12

     C.   Plaintiffs' Contract Claims Fail Because No Agreement
          Was Reached. ............................................................ 14

II.  PLAINTIFFS' CLAIMS BASED ON THEIR ALLEGED JOINT
     OWNERSHIP OF A COPYRIGHT IN A 2003 VIDEOTAPE MUST
     BE DISMISSED .......................................................................... 18

     A.   Plaintiffs Have Not Registered Any Copyrighted Work. ................... 19

     B.   The Copyright Claim Fails to State a Claim for
          Declaratory Judgment (Count II) ........................................ 20

          1.   There Is No Fixation in a Tangible Medium of
               Expression............................................................ 20

          2.   The 2003 Interview is Not an Original Work of
               Authorship............................................................ 21

          3.   Plaintiffs Are Not "Joint Authors" of Any
               Copyrighted Recording.............................................. 22

III. PLAINTIFFS' CLAIMS FOR CONVERSION, UNJUST
     ENRICHMENT AND QUANTUM MERUIT ARE PREEMPTED
     BY THE COPYRIGHT ACT. ...................................................... 24

     A.   The Copyright Act Preempts Equivalent State Law
          Claims................................................................... 24

i

# TABLE OF CONTENTS

**Page**

B.    The Copyright Act Preempts Plaintiffs' Claims of
Conversion, Unjust Enrichment, and Quantum Meruit ......................25

    1.    Conversion (Count VI) ...........................................................25

    2.    Unjust Enrichment and Quantum Meruit
(Counts XI, XII)....................................................................26

IV.    THE RIGHT OF PUBLICITY CLAIM SHOULD BE DISMISSED
BECAUSE PLAINTIFFS' NAMES AND LIKENESSES ARE NOT IN
THE FILM (COUNT VIII)..............................................................27

V.    PLAINTIFFS STATE NO CLAIM OF PROMISSORY ESTOPPEL
(COUNTS XV, XVI)......................................................................28

VI.    PLAINTIFFS STATE NO CLAIM OF FRAUD
(COUNTS XVII, XVIII) ................................................................28

VII.    THERE ARE NO VIABLE CLAIMS, FOR COPYRIGHT
INFRINGEMENT, BREACH OF CONTRACT, OR OTHERWISE,
AGAINST THE CORPORATE DEFENDANTS .........................................30

CONCLUSION ....................................................................................34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................31

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................31

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ........................................................6

*Clark v. Masters*,
    297 Ga. App. 794 (Ga. Ct. App. 2009).............................................12

*Cox v. Progressive Bayside Ins. Co.*,
    316 Ga. App. 50 (Ga. Ct. App. 2012)...............................................12

*Crow v. Wainwright*,
    720 F.2d 1224 (11th Cir.1983) ........................................................24

*Falwell v. Penthouse Int'l, Ltd.*,
    521 F. Supp. 1204 (W.D. Va. 1981).........................................21, 22

*Foley v. Luster*,
    249 F.3d 1281 (11th Cir. 2001) .......................................................24

*Gordon v. Lee*,
    1:05-cv-2162-JFK, No. 2007 U.S. Dist. LEXIS 35361 (N.D. Ga.
    May 14, 2007)..................................................................................23

*Jackson v. Williams*,
    209 Ga. App. 640 (Ga. Ct. App. 1993)............................................14

*Kabir v. Statebridge Co., LLC*,
    No. 1:11-cv-2747-WSD, 2011 U.S. Dist. LEXIS 109778
    (N.D. Ga. Sept. 27, 2011) .................................................................6

*Kapila v. Belotti (In re Pearlman)*,
    No. 6:07-bk-00761-KSJ, 2012 Bankr. LEXIS 2858
    (Bankr. M.D. Fla. June 18, 2012)....................................................11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Levinson v. American Thermex, Inc.*,
196 Ga. App. 291 (Ga. Ct. App. 1990) ............................................................. 13

*Lewis v. Activision Blizzard, Inc.*,
No. C 12-1096 CW, 2012 U.S. Dist. LEXIS (N.D. Cal. Oct. 22,
2012) ................................................................................................................. 26

*Lifestyle Family, L.P. v. Lawyers Title Ins. Corp.*,
256 Ga. App. 305 (Ga. Ct. App. 2002) ..................................................... 14-15

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*,
903 F.2d 1486 (11th Cir. 1990) ....................................................................... 23

*Mathews v. Cleveland*,
159 Ga. App. 616 (Ga. Ct. App. 1981) ........................................................... 12

*Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*,
264 F.3d 622 (6th Cir. 2001) .......................................................................... 25

*P.I.T.S. Films v. Laconis*,
588 F. Supp. 1383 (E.D. Mich. 1984) ............................................................. 26

*Poindexter v. Am. Bd. of Surgery, Inc.*,
911 F. Supp. 1510 (N.D. Ga. 1994) ................................................................ 28

*Poulos v. Home Fed. Sav. & Loan Ass'n*,
192 Ga. App. 501 (Ga. Ct. App. 1989) ..................................................... 14, 15

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010) ......................................................................................... 19

*Scott v. Cushman & Wakefield of Ga.*,
249 Ga. App. 264 (Ga. Ct. App. 2001) ........................................................... 13

*Stuart Weitzman, LLC v. Microcomputer Res., Inc.*,
542 F.3d 859 (11th Cir. 2008) ........................................................................ 19

*Taggart v. WMAQ Channel 5 Chicago*,
00-4205-GPM, No. 2000 U.S. Dist. LEXIS 19499 (S.D. Ill. Oct.
30, 2000) ........................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

*Tavormina v. Evening Star Prods., Inc.,*
 10 F. Supp. 2d 729 (S.D. Tex. 1998) ................................................. 26

*Telecomm Technical Servs., Inc. v. Siemens Rolm Commc'ns, Inc.,*
 66 F. Supp. 2d 1306 (N.D. Ga. 1998) ................................................. 25

*Toffoloni v. LFB Publ'g Grp.,*
 572 F.3d 1201 (11th Cir. 2009) ........................................................ 27

*United States ex rel. Clausen v. Lab. Corp. of Am.,*
 290 F.3d 1301 (11th Cir. 2002) ........................................................ 29

**Statutes**

17 U.S.C. § 101 ...................................................................................... 23

17 U.S.C. § 102(a) .............................................................................. 20, 21

17 U.S.C. § 301(a) ................................................................................ 1, 24

17 U.S.C. § 408 (b)(1) and (2) ................................................................. 20

Cal. Code Civ. P. § 366.3 ......................................................................... 11

Cal. Prob. Code § 7051 ............................................................................. 11

**Other Authorities**

Fed. R. Civ. P. 8 ...................................................................................... 30

Fed. R. Civ. P.  9(b) ........................................................................... 29, 30

Fed. R. Civ. P. 12(b)(1) ........................................................................ 1, 20

Fed. R. Civ. P. 12(b)(6) .............................................................................. 1

Nimmer on Copyright § 1.01[B][1][i] ..................................................... 26

Nimmer on Copyright § 19D.03[B][1] ..................................................... 26

Defendants Alcon Imagine Entertainment, LLC, Imagine Entertainment, LLC, Good Lie Productions LLC, Black Label Media, LLC, Reliance Big Entertainment (Us), Inc., and Margaret Nagle respectfully submit the following motion to dismiss Plaintiffs' Complaint under Section 301 of the Copyright Act, Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and/or under Federal Rule 12(b)(6) for failure to state a claim on which relief may be granted.[1]

## **INTRODUCTION**

*The Good Lie* (the "Film"), released in October of 2014, is a dramatic story that depicts the lives of a fictional group South Sudanese refugees who are related by family and friendship.  The Film's characters escape the perils of the Sudanese Civil War and are relocated to the United States through a humanitarian program.  The Film primarily depicts their life in the United States and the relationships that they forge with each other and with the Americans they meet.

As the Complaint makes clear, the Film is based on the historical facts regarding the thousands of refugees known as the Lost Boys of Sudan.  As a result of atrocities committed during the Sudanese Civil War, tens of thousands of young

---

[1]  These parties, along with Deborah Newmyer, Jeffrey Silver and Outlaw Productions, are collectively referred to as "Defendants."

boys (and some girls) were forced to flee their villages and set out on foot for refugee camps. These refugees were given the moniker "The Lost Boys" and, prior to September 11, 2001, thousands of them were flown from refugee camps in Africa and were re-settled in a number of American cities.

A producer named Bobby Newmyer, after watching 60 Minutes' coverage of this ordeal, began development of a film about the Lost Boys. Mr. Newmyer entered into an agreement with Paramount Pictures to develop a potential motion picture, and the writer Margaret Nagle was hired to draft the screenplay. Mr. Newmyer and Ms. Nagle then traveled to a number of cities, meeting with Lost Boys' organizations and speaking to Lost Boys about their film project. The Plaintiffs in this case claim to be a group of Lost Boys that met with Mr. Newmyer and Ms. Nagle in Atlanta one evening in 2003.

Plaintiffs claim that, during this meeting, they entered into an "oral joint venture" agreement with Mr. Newmyer, and that Mr. Newmyer promised all fifty-four of them that he would "compensate" them in some way, but did not specify what that compensation would be. Plaintiffs do not allege that any documents exist that corroborate their "joint venture" theory, they do not allege that they entered into any written negotiations with Mr. Newmyer, and they do not allege that Mr. Newmyer made any similar "joint venture" agreements with any of the

other groups of Lost Boys that he met across the nation.  Plaintiffs also claim that someone may have made a recording of the meeting with Plaintiffs in 2003, and that this recording is a "joint work of authorship" under the Copyright Act. Plaintiffs assert that, when they introduced themselves in this meeting, and discussed their backgrounds, they participated in the creation of a jointly-owned creative work.  Based on this flawed premise, Plaintiffs argue the Film, rather than being based on Margaret Nagle's screenplay, is an "infringing derivative work" of the supposedly jointly-owned 2003 recording.

In 2003 and 2004, Mr. Newmyer met with groups of Lost Boys in Kansas City and Phoenix, and he funded a leadership conference for the Lost Boys, but he died unexpectedly in 2005.

Many years later, Ms. Nagle's script was acquired by different producers (named in this lawsuit) and those companies financed and developed the Film. The Film was partially filmed in Atlanta in 2013.  During the filming in Atlanta in 2013, a group of Lost Boys, and their lawyer, arrived on the set and informed the producers that they had met Mr. Newmyer in 2003.  This group of Plaintiffs stated that Mr. Newmyer had talked about setting up a scholarship for Lost Boys in conjunction with the development of any motion picture he produced.  This group of Plaintiffs also told the Film's current producers that they had been unable to

3

reach any agreement with Mr. Newmyer in 2003, and that they were meeting with the Film's current producers in the hopes that they could reach some kind of agreement with them.  The Film's current producers did not agree to pay the Plaintiffs any money, and the Film was released in October 2014.

Plaintiffs filed this Complaint in February 2015, asserting eighteen claims in 100 pages.  Plaintiffs' Complaint is based on two primary theories: (1) Plaintiffs allege that their group discussion in 2003 created an "oral joint venture agreement" with Mr. Newmyer and that all of the named parties are somehow bound by this purported agreement; and (2) Plaintiffs allege that their 2003 meeting with Mr. Newmyer was recorded and that they are the legal co-owners of this recording, which recording they believe was "infringed" by the Film.

First, Plaintiffs' "joint venture" theory is fatally defective.  Plaintiffs posit that they entered into a "joint venture agreement" with Mr. Newmyer during a meeting in April of 2003.  The contract claims are asserted, not by the individual Lost Boys, but by a Foundation that did not exist in 2003, and which Plaintiffs created for purposes of this lawsuit.  Georgia law requires such assignments to be in writing, but Plaintiffs have not even pled, much less established, the required writing.  Thus, Plaintiffs' contract-based claims must be dismissed because they cannot be asserted by an entity that did not exist at the time of the events in

4

question and because no written assignment has been alleged.  Moreover, the

"contract" was purportedly made with a deceased person – the late Mr. Newmyer –

and neither Georgia nor California law allows such a claim against his "estate"

(which no longer exists) or his widow.  Because there is no contract, there can be

no breach of fiduciary duty, or breach of good faith and fair dealing.

Plaintiffs' contract-based claims are further belied by their own statements at

the April 2013 meeting with the Film's producers, where they unequivocally stated

that they never reached any agreement with Mr. Newmyer.  Plaintiffs' Complaint

presents partial, heavily-elided quotes from the recording of that April 2013

meeting, but Plaintiffs did not attach either the videotape of that meeting, or a

transcript of the conversation.  Defendants, however, have attached the videotape

and the transcript of the meeting for the Court's review.  This transcript

unequivocally shows that the Plaintiffs – prior to filing this lawsuit – admitted that

no "joint venture agreement" was ever entered into with Bobby Newmyer.

In fact, during this 2013 recorded meeting with the Film's current producers,

Plaintiffs conceded that Mr. Newmyer had only discussed a general scholarship

fund for **all** of the Lost Boys, and never stated that he would provide any kind of

compensation to this particular group of Lost Boys – either for their life stories or

otherwise.  Declaration of David Grossman ("Grossman Decl."), Exh. B at 27:8-11

("We could not come to a contractual term with Margaret or Bob.  They were not willing to negotiate on our term."); *id.* at 43:2-4 ("We are not going to be accepting anything to do with the scholarship or any promises.  That's why we didn't come to an agreement with them.").[2]

Second, Plaintiffs' copyright claim is deficient on its face.  Plaintiffs assert that the group discussion they had with Mr. Newmyer and representatives of a local foundation was recorded.  Plaintiffs argue that they are joint owners of the copyright in this purported recording, and that the Film is a "derivative work" of this copyrighted recording.  This theory fails because: (a) Plaintiffs did not register that purported "work" with the Copyright Office – a prerequisite to subject matter jurisdiction in this Circuit; (b) Plaintiffs do not claim to possess this supposed recording; and (c) even if such a recording existed, the Copyright Act does not protect extemporaneous answers to interview questions.  Plaintiffs do not own a copyright in a work they did not create (and which does not exist), and all of Plaintiffs' copyright-related claims must fail.

---

[2] A document attached to a motion to dismiss may be considered by the court when subject to judicial notice, or "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim…."  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Kabir v. Statebridge Co., LLC*, No. 1:11-cv-2747-WSD, 2011 U.S. Dist. LEXIS 109778, at *1-2 n.1 (N.D. Ga. Sept. 27, 2011).

Plaintiffs' claims for unjust enrichment and *quantum meruit* are subject to dismissal, as those are not free-standing claims.  Plaintiffs' claim for conversion is preempted by the Copyright Act, and Plaintiffs' claim for misappropriation is barred because there is no allegation that any of the defendants appropriated any of the individual Plaintiffs' actual names or likenesses.  And the remaining claims – for promissory estoppel and fraud – fail to contain allegations of any specific promise or any specific misrepresentation of fact.

To survive a motion to dismiss, Plaintiffs cannot just throw eighteen causes of action and 100 pages of allegations at the proverbial wall, and hope something sticks.  The Supreme Court has confirmed that the relevant standard is not mere possibility, but *plausibility*, and Plaintiffs have failed to plead any actual, non-speculative facts sufficient to support any cause of action.

## STATEMENT OF FACTS

*The Good Lie* is based on a screenplay by an accomplished writer named Margaret Nagle.  The Film tells the fictional story of a group of "Lost Boys of Sudan" who escape the horrors of the Sudanese Civil War, and who are relocated to the United States through a UN relief program.  Grossman Decl., Exh. C.

In the 1980s and 1990s, tens of thousands of young Sudanese boys and girls managed to escape the fighting in South Sudan and fled to refugee camps in Kenya

7

and Ethiopia.  In or around 2000-2001, thousands of Lost Boys were placed in various U.S. cities through humanitarian efforts.  *See* Complaint, ¶¶17-34.

In 2003, Mr. Newmyer and Margaret Nagle attended a meeting in Atlanta at the office for the non-profit Lost Boys Foundation.  *Id.*, at ¶37.[3]  Plaintiffs allege that Mr. Newmyer agreed at that time that "the proceeds of any fundraising efforts associated with the script and the movie would be contributed solely to a non-profit foundation organized and operated by [the Plaintiffs]."  *Id.*, at ¶45.  Plaintiffs further allege that, at that meeting, "Newmyer and Nagle explained that it was impossible to agree on the ultimate compensation from the profits of the movie unless and until the details of the movie's production were known."  *Id.*, at ¶46. Later in their Complaint, Plaintiffs allege that it was agreed, at this same meeting, that "Outlaw Productions, Newmyer, and Nagle would pay [Plaintiffs] $55,000 for their life stories…."  *Id.*, at ¶51.

Plaintiffs claim that this meeting may have been recorded by either "audio or video" means, although they do not know who made this purported recording.  *Id.*, at ¶57.  Plaintiffs assert that this alleged recording is a work of joint authorship

---

[3] This group is not to be confused with the corporation that Plaintiffs created in 2013 for purposes of this lawsuit, which they have named the "Foundation for Lost Boys and Girls of Sudan, Inc."  Complaint, fn. 1; Grossman Decl., Exh. D.

under the Copyright Act, but Plaintiffs do not allege any agreement regarding joint ownership between any of them and whoever made the supposed video/audio recording.

Bobby Newmyer passed away in 2005 (*Id.*, at ¶65), and the rights to Ms. Nagle's original treatment were eventually acquired by the current producers of the Film. *Id.*, at ¶¶67-76.

In 2013, the Film was being shot in Atlanta (although it is primarily set in Kansas City), and a group of Plaintiffs, along with their lawyer, came to the set and met with two of the Film's producers. *Id.*, at ¶85. At that meeting, several of the Plaintiffs, including their spokesman, Nathanial Nyok, unequivocally stated that they never reached any agreement with Bobby Newmyer. *See* Grossman Decl. Exhs. A and B. Plaintiffs repeatedly explained that they had not made any agreement with Bobby Newmyer, and that they were hoping to receive some sort of compensation – but not in the form of a scholarship – from the Film's current producers. Grossman Decl., Exh. B at 37:3-4 ("We wanted to reach an agreement. We did not reach an agreement.").

Plaintiffs allege that, at this 2013 meeting, one of the Film's producers stated that the Plaintiffs "should be compensated" for their experiences. However, this statement, when viewed in context, refers only to the producers' intentions that

fundraising efforts relating to the Film would result in charitable donations being made to charities benefiting Lost Boys and Girls.  Indeed, during this April 2013 meeting, when the Film's current producers explained their pre-existing philanthropic intentions relating to the Film, Plaintiffs unequivocally stated that they were not interested in the producers' charitable endeavors, and instead wanted money:  "We are asking nothing short of coming to an agreement in term of money.  We are not going to be accepting anything to do with the scholarship or any promises.  That's why we didn't come to an agreement with them."  *Id.*, at 42:25-43: 4.

The Film was released in October of 2014.  Plaintiffs filed this suit in February of 2015, asserting claims against Bobby Newmyer's widow, his former production company, a former partner in his production company (Jeff Silver), Margaret Nagle, and a handful of corporate entities involved in the Film's production and distribution.  For the reasons set forth below, none of these claims are supported by the facts or the law.

**ARGUMENT**

## I.   PLAINTIFFS' CONTRACT-BASED CLAIMS SHOULD BE DISMISSED (COUNTS I, VII)

### A.   Plaintiffs' Contract Claim Fails Because the Lost Boys' Counterparty, Mr. Newmyer, is Deceased.

Most fundamentally, the contract claim fails because Plaintiffs' purported counterparty, Mr. Newmyer, passed away in 2005.  Complaint, ¶65.  Mr. Newmyer passed away a resident of California, and, therefore, California law applies to claims against his estate.  Cal. Prob. Code § 7051 ("If the decedent was domiciled in this state at the time of death, the proper county for proceedings concerning administration of the decedent's estate is the county in which the decedent was domiciled, regardless of where the decedent died.").  California also has a one-year statute of limitations for claims against an estate.  Cal. Code Civ. P. § 366.3. Plaintiffs' claim was asserted well outside that one year limit, and, therefore, it should be dismissed as untimely.  *See, e.g.*, *Kapila v. Belotti (In re Pearlman)*, No. 6:07-bk-00761-KSJ, 2012 Bankr. LEXIS 2858 (Bankr. M.D. Fla. June 18, 2012) (dismissing suit filed in Florida against California estate under Section 366.3 because it was filed two years after the decedent's death).

Moreover, even if California's one-year statute of limitations did not apply to a contract claim against a California decedent, the contract claim would still fail

11

under Georgia law, since "[i]n Georgia, a deceased person cannot be a party to legal proceedings, and any suit brought against a deceased defendant is a nullity." *Cox v. Progressive Bayside Ins. Co.*, 316 Ga. App. 50, 51 (Ga. Ct. App. 2012); *see also Clark v. Masters*, 297 Ga. App. 794 (Ga. Ct. App. 2009); *Mathews v. Cleveland*,159 Ga. App. 616 (Ga. Ct. App. 1981) (collecting cases).

Fundamentally, Plaintiffs allege a contract was formed between themselves and Mr. Newmyer in Atlanta in 2003. This purported contract (the so-called "Joint Venture Agreement") is the basis for its two breach of contract claims, as well as the related claims regarding fiduciary duty and good faith and fair dealing. But Georgia law precludes a lawsuit against a deceased person, whether directly or purportedly through his estate or surviving spouse. All these claims must be dismissed.

## B.   <u>The Contract Claim Fails Because There Is No Written Assignment to the Foundation.</u>

Even if Plaintiffs had a tenable contract claim to assert, and they do not, the Foundation cannot assert it on their behalf without a written assignment – which Plaintiffs have not pled. Plaintiffs allege that all of their claims and intellectual property rights were "irrevocably assigned" to the Foundation for Lost Boys and Girls of Sudan, Inc., but they do not allege, or attach, a written assignment. Complaint, ¶95.

12

Georgia law is clear on this point – an assignment of a cause of action (a "chose in action") for a contract claim must be in writing to be enforceable. *See, e.g.*, *Scott v. Cushman & Wakefield of Ga.*, 249 Ga. App. 264, 265-266 (Ga. Ct. App. 2001) ("To be enforceable by the assignee, such an assignment must be in writing."); *Levinson v. American Thermex, Inc.*, 196 Ga. App. 291, 292  (Ga. Ct. App. 1990) ("[W]here the type of agreement on which the action is brought is alleged to be an assignment of a chose in action, and it is no more than an assignment, a mere purchase of another's cause of action, it must be in writing if the assignee is to sue thereon in his own name in a purely legal action.") (citing *State Farm &c. Ins. Co. v. Jones*, 98 Ga. App. 46, 57 (Ga. Ct. App. 1958)).

Plaintiffs are very clear in the Complaint that this lawsuit, and all causes of action therein, are brought by the Foundation, rather than the individual Lost Boys, purportedly by assignment. *See, e.g.*, Compl. ¶ 95.  However, under Georgia law, those assignments must be in writing to be valid, and Plaintiffs have failed to plead the existence of a writing assigning all causes of action of all kinds from each of the fifty-four named Lost Boys to the Foundation.  Plaintiffs' failure to execute a written assignment requires that all of their claims in this lawsuit be dismissed.

**C.** **Plaintiffs' Contract Claims Fail Because No Agreement Was Reached.**

Plaintiffs concede that there is no written agreement or writing of any kind between themselves and any of the Defendants. Thus, Plaintiffs' claim is that they entered into an <u>oral</u> joint venture agreement with a man who passed away ten years ago. Georgia recognizes the enforceability of oral agreements only if all of the requirements of contract formation are met – including a mutual meeting of the minds on all material terms. "[I]n order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible." *Jackson v. Williams*, 209 Ga. App. 640, 643 (Ga. Ct. App. 1993) (collecting cases). Georgia law also recognizes that a purported oral agreement cannot be enforceable if it leaves certain terms to be negotiated later, or is otherwise uncertain or incomplete. *Poulos v. Home Fed. Sav. & Loan Ass'n*, 192 Ga. App. 501 (Ga. Ct. App. 1989). In other words, an oral agreement may be enforceable, but the plaintiff must provide sufficient evidence that an agreement on all material terms was actually reached. *Lifestyle Family,*

*L.P. v. Lawyers Title Ins. Corp.*, 256 Ga. App. 305 (Ga. Ct. App. 2002) (finding no evidence of enforceable oral agreement).[4]

The Plaintiffs do not come close to establishing a binding, enforceable "joint venture" agreement covering all material terms between fifty-four separate individuals and a deceased producer.  In fact, Plaintiffs' Complaint: (1) acknowledges that no amount of money was ever agreed to as compensation for Plaintiffs' "stories"; and (2) asserts that Mr. Newmyer's purported "agreement" was to somehow arrange for an unknown amount money and "publicity" to be donated to an entity that did not exist.  In Paragraph 64 of their Complaint, Plaintiffs allege that "the parties did not agree on a dollar amount for selling the script or making the moving during their discussions in 2003, 2004, and 2005…[Newmyer and Nagle] further promised that 100% of all charitable fundraising, foundation seed money, and positive publicity to the South Sudanese cause would be directed exclusively to the Foundation."  This alleged joint venture agreement is fatally vague, as Plaintiffs concede that no amount of money was ever

---

[4] *See also Lifestyle Family, L.P. v. Lawyers Title Ins. Corp.*, 256 Ga. App. 305 (Ga. Ct. App. 2002) (no evidence of enforceable oral agreement); *Poulos v. Home Fed. Sav. & Loan Ass'n*, 192 Ga. App. 501 (Ga. Ct. App. 1989) (oral settlement agreement not enforceable where it left certain terms to be negotiated later because the agreement was uncertain, incomplete, and unenforceable with regard to some provisions, in contravention of Georgia law).

agreed upon.  Further, Plaintiffs claim the impossible – that Mr. Newmyer promised, in 2003, that funds would be donated to "the Foundation," an entity that did not exist until shortly before the filing of this lawsuit.  *See* Grossman Decl., Ex. D (Georgia Secretary of State records for the Foundation).

Additionally, Plaintiffs have incorporated into their Complaint alleged quotes from a recording made by their counsel in 2013, during a meeting between Plaintiffs and certain representatives of the Film's producers.  Although Plaintiffs have not submitted that recording to the Court, Defendants have provided it, as well as a transcript thereof, as Exhibits A and B to the concurrently filed Grossman Declaration.  This recording demonstrates that Plaintiffs are aware that no "agreement" was entered into at the 2003 group discussion with Mr. Newmyer.

During this recorded conversation in April of 2013, one of the producers, Molly Smith, repeatedly confirmed that she was not aware of any agreement of any kind made back in 2003 (years before she became involved in the Film), except for the fact that Bobby Newmyer intended to cause Paramount to donate some money to a general scholarship fund for Lost Boys if the Film was ever made.  The Plaintiffs, during this April 2013 meeting, including their leader, Moses Matur Chol, and their spokesman, Nathaniel Nyok, agreed and confirmed that no agreement had ever been made with Bobby Newmyer and Margaret Nagle:

16

"[W]e could not come to a contractual term with Margaret or Bob. They were not willing to negotiate on our term."

"So as a delegation and – and authorized by The Lost Boys Association, we are asking nothing short of coming into an agreement in term of money.  We are not going to be accepting anything to do with the scholarship or any promises.  That's why we didn't come to an agreement with them."

"But, again, we wanted to reach an agreement.  We did not reach an agreement.  She withdrawn the script.  Then she [Margaret Nagle] disappeared.  There was no communication either with The Lost Boys National Association or with any Lost Boys."

"So today we know -- the association is here, and we know what we want.  So the idea that she came here and said there was a scholarship fund or something of that kind, was not our idea.  And so if we know what we wanted, would be up to us to sit and -- because we are going to deal with the schools or the scholarship, and then we have our own foundation to do that.  Nobody will decide for us what we want and say, 'Oh, we're going to establish this scholarship fund or that.' If we are to sell our story, we have to come to a contractual term with whoever is going to produce our movie and demand what we want.  And that's what we going to do today."

"So now, when asking that we are compensated in term of money, it will be up to us to decide what we want to do, because this is an organization with executive and board of directors and members.  So with that I don't think it will be an issue with your production company.  If we come to an agreement, it will be up to the leadership and the members to decide what they want to do with the money."

Grossman Decl., Exh. B at 27:9-11; 42:24-43:4; 37:3-7; 37:11-23; 51:22-52:5

(Court Reporter Transcript of Meeting).

The contract claim, as pled, is impermissibly vague and does not establish a meeting of the minds on all material terms.  Plaintiffs admit that no agreement on

compensation was reached, and do not claim what the terms of the so-called "joint venture" were going to be (or what amount of profits and losses would be shared and contributed by the parties), nor do Plaintiffs even allege who the parties to the supposed joint venture agreement were (for example, was it a joint venture of fifty-five partners, who were to split profits and losses equally?).  Further, Plaintiffs have conceded, in a videotaped conversation, which they incorporate into their Complaint, that no such agreement was ever reached.  Because Plaintiffs have not alleged the existence of an enforceable contract, all of their contract claims must be dismissed.  (The claims based on the existence of a joint venture agreement are Count I (Breach of Contract); Count IV (Breach of Fiduciary Duty), Count V (Accounting), Count VII (Breach of Contract), Count IX-X (Breach of Covenant of Good Faith and Fair Dealing), Counts XV-XVI (Promissory Estoppel), Counts XVII-XVIII (Fraudulent Inducement)).

## II.  PLAINTIFFS' CLAIMS BASED ON THEIR ALLEGED JOINT OWNERSHIP OF A COPYRIGHT IN A 2003 VIDEOTAPE MUST BE DISMISSED

Plaintiffs allege that the original copyrighted work here is not the Film, but rather a 2003 recording of a group discussion between a deceased producer (Bobby Newmyer) and dozens of Lost Boys in Atlanta.  This claim fails as a matter of law on multiple grounds.

18

### A.   __Plaintiffs Have Not Registered Any Copyrighted Work.__

Most fundamentally, any claim under the Copyright Act fails because the Plaintiffs have not registered a copyrighted work.  The Complaint alleges that some unknown person made either an audio or video recording of the events, but Plaintiffs do not have a copy of the recording and, of course, have not applied to register any recording with the Copyright Office.  In the Eleventh Circuit, the failure to register the work is fatal to the claim.

Specifically, in *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859 (11th Cir. 2008), the Eleventh Circuit held that registration is a necessary prerequisite to a copyright suit for declaratory judgment of ownership (not just for infringement).  *Id.* at 863 (citing *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 & n.4 (11th Cir. 1990)).  While the Supreme Court's decision in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) addressed a related question of whether the registration requirement is jurisdictional (ruling that it was not), *Reed* did not address this portion of *Stuart Weitzman*, and it remains good law in the Eleventh Circuit.  The Declaratory Judgment Act does not itself confer subject matter jurisdiction.  *Stuart Weitzman*, 542 F.3d at 867.  Accordingly, in order to file suit under the Copyright Act – whether for infringement or declaratory judgment – the alleged video must be registered with the Copyright Office.  17

U.S.C. § 408 (b)(1) and (2).  Plaintiffs' failure to do so precludes any copyright

claim, and warrants dismissal for lack of subject matter jurisdiction under Federal

Rule of Civil Procedure 12(b)(1).

### B.     The Copyright Claim Fails to State a Claim for Declaratory Judgment (Count II)

#### 1.     There Is No Fixation in a Tangible Medium of Expression.

Plaintiffs seek a bevy of declarations and injunctions in their copyright

claim, including a declaration of joint ownership of the 2003 audio/video recording

(separately alleged to be an original work of authorship (Compl. ¶ 162)), a

declaration that the Defendants are not allowed to make and  distribute the Film

(*id.,* at ¶163), and a permanent injunction (a) preventing Defendants from

registering the 2003 interviews with the Copyright Office (*id.*, at ¶171), and (b)

prohibiting "copyright infringement of the Screenplay" (*id.*, at ¶172).  But

Plaintiffs do not have this alleged recording, and they instead allege that they

believe an "audio or video" recording may have been created by someone at this

meeting.  Because there is no fixation in a tangible medium of expression, there is

no copyright claim of any sort to be asserted.  17 U.S.C. § 102(a).  Plaintiffs'

copyright claims should be dismissed for failure to fix in a tangible medium of

expression.

### 2.     The 2003 Interview is Not an Original Work of Authorship.

To be eligible for copyright protection, a work must not only be fixed in a tangible medium of expression; it must also be an "original work[] of authorship." 17 U.S.C. § 102(a).  Even if there were a recording of the 2003 group meeting, Plaintiffs would still have no copyright interest to assert because an interviewee cannot claim copyright protection for his answers in an interview.

In *Falwell v. Penthouse Int'l, Ltd.*, 521 F. Supp. 1204 (W.D. Va. 1981), the Reverend Jerry Falwell claimed copyright protection for interviews conducted of him by a magazine, arguing that the magazine published the interview without his consent, and contrary to conditions he demanded at the time of the interview.  The court roundly rejected this attempt, finding that his statements in the interview were unprotectable ideas, not protectable literary works:

> Plaintiff cannot seriously contend that each of his responses in the published interview setting forth his ideas and opinions is a product of his intellectual labors which should be recognized as a literary or even intellectual creation.  There is nothing concrete which distinguishes his particular expression of his ideas from the ordinary.

*Id.* at 1208.

Similarly, and following *Falwell*, the court in *Taggart v. WMAQ Channel 5 Chicago*, 00-4205-GPM, No. 2000 U.S. Dist. LEXIS 19499 (S.D. Ill. Oct. 30, 2000) found that an interviewee prisoner had no copyright interest in a recorded

interview conducted by a television station.  As in *Falwell*, the court held that the plaintiff's answers to the reporter's questions were not pre-meditated creative literary works – rather, they were simply ideas, opinions, and facts, none of which are eligible for copyright protection.  *Taggart*, at \*15 (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344-45 (1991)).

These cases are squarely on point.  The group discussion between Mr. Newmyer and the Plaintiffs was an unscripted conversation where the parties introduced each other and described themselves.  Plaintiffs' purported statements at this meeting were not protectable literary works nor were they the result of creative premeditation - they were simply statements of ideas, facts and opinion made during a conversation, and as such, are not creative or literary expression eligible for copyright protection.

### 3.    Plaintiffs Are Not "Joint Authors" of Any Copyrighted Recording.

Even if there was a recording, and even if that recording were eligible for copyright protection, there is still no basis to claim that Plaintiffs are "joint authors" of this alleged work.

A "joint work" is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101.  The Northern District of Georgia has

ruled that "a joint authorship claimant [is] required to prove: (1) that he made a copyrightable contribution to the work; and (2) that the contributors intended to regard themselves as joint authors." *Gordon v. Lee*, 1:05-cv-2162-JFK, No. 2007 U.S. Dist. LEXIS 35361, at *23-24 (N.D. Ga. May 14, 2007) (citing *Childress v. Taylor*, 945 F.2d 500, 506-08 (2nd Cir. 1991)). *Gordon* further ruled that "[t]here is no question that the intent of the contributors to a work is relevant and significant," and that *M.G.B. Homes, Inc.* v. *Ameron Homes*, 903 F.2d 1486, 1493 (11th Cir. 1990) is fully consistent with that principle. *Gordon*, 2007 U.S. Dist. LEXIS 35361, at *24 ("There  no evidence that it was the intent of either Ballough or Unlimited that this concept (the sketch) become part of the finished expression (the architectural plans and drawings.")

Plaintiffs have pled no facts establishing any intention to create a joint work of authorship.  There are no alleged facts demonstrating that Mr. Newmyer and the Plaintiffs discussed the creation of an audiotape or videotape, the content to be included on it, or the way in which it was to be fixed in a tangible medium. Plaintiffs cannot retroactively create a joint work by unilateral declaration.  They have not alleged any facts demonstrating that the supposed recording was intended to be jointly owned when it was created and therefore their copyright claim must be dismissed.

For all of the foregoing reasons, Plaintiffs' copyright claim (Count II), and all claims related thereto (Count III – Injunctive Relief, and Counts XI-XIV – Unjust Enrichment and Quantum Meruit), must be dismissed.

### III.  PLAINTIFFS' CLAIMS FOR CONVERSION, UNJUST ENRICHMENT AND QUANTUM MERUIT ARE PREEMPTED BY THE COPYRIGHT ACT.

#### A.  The Copyright Act Preempts Equivalent State Law Claims

Section 301 of the Copyright Act preempts all state causes of action based on a right found in the Act or an equivalent to such a right, stating that:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, ... are governed exclusively by this title.... [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a); *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001); *Crow v. Wainwright*, 720 F.2d 1224, 1225–26 (11th Cir. 1983).  In the Eleventh Circuit, to determine whether a state law claim is preempted by the Copyright Act, the Court must decide "whether the rights at issue fall within the 'subject matter of the copyright' set forth in sections 102 and 103 and whether the rights at issue are 'equivalent to' the exclusive rights of section 106."  *Telecomm Technical Servs., Inc. v. Siemens Rolm Commc'ns, Inc.*, 66 F. Supp. 2d 1306, 1326 (N.D. Ga. 1998)

(citing *Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc.*, 785

F.2d 897, 913-914 (11th Cir. 1986)).

### B.   The Copyright Act Preempts Plaintiffs' Claims of Conversion, Unjust Enrichment, and Quantum Meruit

#### 1.   Conversion (Count VI)

Plaintiffs claim "conversion" of their "ideas."  However, the alleged theft of

intangible ideas is almost universally preempted by the Copyright Act.  *Murray*

*Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 635–36 (6th Cir. 2001)

(conversion claim re. musical work and related artwork held preempted).

Here, Plaintiffs' claim that they contributed copyrightable content to a joint

work of authorship (a video recording) and that the video was used to create an

infringing "derivative work" in the form of the screenplay for the Film.  Plaintiffs

seek remedies under the Copyright Act based on these facts, and they concurrently

allege that this same conduct constitutes state law "conversion" of ideas.  Plaintiffs

claim that the "conversion" was the use of their supposedly copyrighted work in a

screenplay and a film – but the subject matter of this claim is covered by the law of

copyright, and the Copyright Act preempts it.  *Id.*; Nimmer on Copyright

§§ 1.01[B][1][i], 19D.03[B][1].

### 2.      Unjust Enrichment and Quantum Meruit (Counts XI, XII)

Claims for unjust enrichment and *quantum meruit* are often dismissed as preempted when they seek recovery for the same alleged wrong – the unauthorized use of copyrightable expression – as a copyright claim.  *See, e.g.*, *Tavormina v. Evening Star Prods., Inc.*, 10 F. Supp. 2d 729, 734 (S.D. Tex. 1998) (unjust enrichment claim preempted); *P.I.T.S. Films v. Laconis*, 588 F. Supp. 1383, 1386 (E.D. Mich. 1984) (claims for unjust enrichment and quantum meruit preempted); *Lewis v. Activision Blizzard, Inc.*, No. C 12-1096 CW, 2012 U.S. Dist. LEXIS, 151739, at *10-11 (N.D. Cal. Oct. 22, 2012) (quantum meruit claim was preempted by the Copyright Act because recovery sought was based on seeking compensation for defendant's alleged use of plaintiff's voice recordings which was equivalent to her rights under copyright law).

All of Plaintiffs' unjust enrichment and *quantum meruit* claims turn on the same essential theory – that the Plaintiffs conferred a "benefit" on the Defendants by providing their recorded materials (which they contend are copyrighted works), and that the Defendants did not compensate them for using those materials to create derivative works (i.e., the Screenplay and the Film).  Plaintiffs' unjust enrichment and *quantum meruit* claims therefore seek the same relief, based on the

same facts, as Plaintiffs' copyright claim, and the Copyright Act preempts these equivalent state-law claims for relief.

## IV.  THE RIGHT OF PUBLICITY CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS' NAMES AND LIKENESSES ARE NOT IN THE FILM (COUNT VIII)

Fundamental to any right of publicity claim is that the name or likeness of an individual is actually used.  *See, e.g.*, *Toffoloni v. LFB Publ'g Grp.*, 572 F.3d 1201, 1205 (11th Cir. 2009).  Plaintiffs allege that "Defendants appropriated [Plaintiffs'] likenesses without consent for their commercial gain through the release of *The Good Lie*" (Compl. ¶ 223), and further, that the "Defendants' refusal to obtain [Plaintiffs'] consent to use their likeness in *The Good Lie* constitutes an unwarranted intrusion in their privacy interests, of which there are not credible public interest exceptions" (Compl. ¶ 224).  However, Plaintiffs do not, and cannot, allege that any of their names or likenesses were used in the Film.  *See* Grossman Decl. Exh. C (DVD copy of the Film).  At best, Plaintiffs have alleged that several of them provided anecdotes that they believe inspired various incidents in the Film, but not that the Film appropriated their images for commercial gain. Plaintiffs' misappropriation claim therefore must be dismissed.

## V.   PLAINTIFFS STATE NO CLAIM OF PROMISSORY ESTOPPEL (COUNTS XV, XVI)

Among the necessary elements of a promissory estoppel claim are (a) an actual promise by the defendant, and (b) actual reliance by the plaintiff.  *See, e.g.*, *Poindexter v. Am. Bd. of Surgery, Inc.*, 911 F. Supp. 1510, 1523 (N.D. Ga. 1994) (citing *Fidelity & Deposit Co. v. West Point Constr. Co.*, 178 Ga. App. 578, 580 (1986)).  Plaintiffs have not and cannot plead any actual facts to support either element.  As discussed above, Plaintiffs have *admitted* in a videotape that they created themselves that Mr. Newmyer did not promise them anything at all, and that no agreement was reached in 2003.  *See* Grossman Decl. Exh. B at 27:9-10, 37:3-4 ("[W]e could not come to a contractual term with Margaret or Bob.  … We did not reach an agreement.").  Nor was there any new "promise" made at the "ambush" meeting in 2013, and Plaintiffs plead no facts supporting how or why they relied to their detriment on anything said in 2013 – rather, they offer just the bare statement that "Plaintiffs relied on such promises to their detriment."  (Compl. ¶ 286).

## VI.   PLAINTIFFS STATE NO CLAIM OF FRAUD (COUNTS XVII, XVIII)

Lastly, Plaintiffs assert two claims of "fraud" – first, that Nagle, Newmyer, Outlaw and Silver all made a "false representation … that no film would be

produced from the Screenplay unless and until the Contributing Lost Boys consented after agreeing on the compensation arrangement with the producers/studio" (Compl. ¶ 304), and second, that Alcon, Imagine, Reliance, Black Label Media and GLP all made a "false representation … that they would make a payment to the Foundation for the Contributing Lost Boys' contribution to the Screenplay." (Compl. ¶ 314). Neither comes close to stating an actual, tenable claim for fraudulent inducement.

Under Rule 9(b), notice pleading does not suffice for fraud claims; rather, "the circumstances constituting fraud or mistake shall be stated with particularity." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002). Plaintiffs fail to identify (a) any specific statement by any specific individual, (b) how that statement was actually false, or (c) how any of the Lost Boys (much less all fifty-four of them) justifiably and demonstrably relied. In fact, both theories completely rely on the completely speculative and unsupported claim that all of the Defendants held the secret, undisclosed intention to not do what they said they would, for the purpose of tricking the Lost Boys. And perhaps worse, the Lost Boys own statements at the "ambush" show that they were not tricked, but well-understood that, in their words, "we could not come to a contractual term with Margaret or Bob. … We did not reach an agreement." Grossman Decl., Exh. B at

27:9-10, 37:3-4.  This kind of allegation cannot survive a motion to dismiss under

Rule 8 notice pleading, much less the heightened standards of Rule 9(b) for fraud

claims.

**VII.   THERE ARE NO VIABLE CLAIMS, FOR COPYRIGHT INFRINGEMENT, BREACH OF CONTRACT, OR OTHERWISE, AGAINST THE CORPORATE DEFENDANTS**

Plaintiffs have named Alcon Entertainment, Black Label Media, Imagine

Entertainment, Reliance Big Entertainment, and Good Lie Productions (the

"Corporate Defendants").  Plaintiffs' sixth claim, for breach of contract, is against

these Corporate Defendants.  However, Plaintiffs do not allege any facts

demonstrating the existence of a contract between fifty-four individuals and any of

these entities.  Plaintiffs allege that they had a discussion in 2003 with Mr.

Newmyer but the Corporate Defendants are not alleged to have been part of this

discussion.  Further, the video recording from 2013 (Grossman Decl., Ex. A, which

is both incorporated by reference in the Complaint and judicially noticeable) shows

that no agreement of any kind was reached with the Corporate Defendants at that

time, when Plaintiffs and their attorney approached representatives of two of the

Corporate Defendants during shooting of the Film.

Plaintiffs' tenth claim, for breach of the covenant of good faith and fair

dealing, is duplicative of their breach of contract claim and asserts that the

Corporate Defendants breached a contract – from 2003 – that they were not party to.  Plaintiffs simply conclude that the Corporate Defendants "agreed to compensate the Contributing Lost Boys for their original stories and acknowledged and adopted the [2003] Joint Venture Agreement."  Complaint, ¶236.  While facts must be accepted as alleged, a court is not required to accept conclusory allegations or legal characterizations, nor must the court accept unreasonable inferences.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  There are no alleged facts to support the conclusory assertion that an "agreement" was entered into between the Corporate Defendants and fifty-four named Plaintiffs (or their recently-formed corporation).

Plaintiffs' eleventh claim, for Unjust Enrichment, claims that Plaintiffs (or their corporation) conferred a benefit on the Corporate Defendants, but there are no facts to support this theory, and the only interaction between any of the Plaintiffs and any representatives of the corporate defendants was a short meeting in 2013 during which no benefits of any kind or nature were conferred.

Similarly, Plaintiffs' thirteenth claim, for *quantum meruit*, asserts that Plaintiffs "performed services valuable to" the Corporate Defendants.  Again, there are no facts to support this conclusion and no services were performed by the Plaintiffs for the Corporate Defendants.

31

Plaintiffs' fifteenth claim, for Promissory Estoppel, asserts that the Corporate Defendants "made promises" to Plaintiffs, and that, based on those undefined promises, Plaintiffs suffered damage when they reasonably relied on the promises to their detriment.  Complaint, ¶280.  Plaintiffs have not alleged any enforceable promises made by the Corporate Defendants.  Nor do Plaintiffs allege what "reasonable reliance" was made based on these unarticulated promises.  There are absolutely no allegations to support a promissory estoppel claim against the Corporate Defendants and this claim must be dismissed.

Finally, Plaintiffs' eighteenth claim, for "Fraudulent Inducement" alleges that the Corporate Defendants made a "false representation" and that the Plaintiffs relied on this supposedly false representation to their detriment.  Plaintiffs do not allege any of the basic elements of such a claim, including who made such a representation, which Plaintiffs, if any, relied on a representation by the Corporate Defendants, or what actions were taken in reliance on this representation.

All claims asserted against the Corporate Defendants are deficient, including for breach of contract (Count VI), breach of the covenant of good faith and fair dealing (Count X), unjust enrichment (Count XI), *quantum meruit* (Count XIII), promissory estoppel (Count XV) and fraudulent inducement (Count XVIII).  Plaintiffs did not enter into a contract with the Corporate Defendants, did not

perform services for the Corporate Defendants, and were not promised anything by the Corporate Defendants.  The Corporate Defendants therefore request that the Court dismiss them from this action.

## CONCLUSION

For the foregoing reasons, the moving Defendants respectfully request that Plaintiffs' Complaint be dismissed for lack of subject matter jurisdiction, failure to state a claim on which relief may be granted, and/or under Section 301 of the Copyright Act.

Respectfully submitted this 28th day of April, 2015.

**CRUSER & MITCHELL, LLP**

/s/ William T. Mitchell
**William T. Mitchell**

Meridian II, Suite 2000           Georgia Bar No. 513810
275 Scientific Drive
Norcross, GA 30092
(404) 881-2622 (Phone)
(404) 881-2630 (Fax)

**LOEB & LOEB LLP**

/s/ David Grossman
**David Grossman**

10100 Santa Monica Blvd., Suite 2200     *Pro Hac Vice* Pending
Los Angeles, CA 90067
(310) 282-2000 (Phone)
(310) 282-2200 (Fax)

*Attorneys for Defendants Alcon Entertainment, LLC, Imagine Entertainment, LLC, Good Lie Productions, LLC, Black Label Media, LLC, Reliance Big Entertainment, (US), Inc., and Margaret Nagle*

## <u>CERTIFICATION AS TO FONT</u>

Pursuant to N.D. Ga. Local Rule 7.1(D), I hereby certify that this document

is submitted in Times Roman 14 point type as required by N.D. Ga. Local Rule

5.1(b).

Respectfully submitted this 28th day of April, 2015.

**CRUSER & MITCHELL, LLP**

/s/ William T. Mitchell
**William T. Mitchell**
Georgia Bar No. 513810

Meridian II, Suite 2000
275 Scientific Drive
Norcross, GA 30092
(404) 881-2622 (Phone)
(404) 881-2630 (Fax)

**LOEB & LOEB LLP**

/s/ David Grossman
**David Grossman**
*Pro Hac Vice* Pending

10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
(310) 282-2000 (Phone)
(310) 282-2200 (Fax)

*Attorneys for Defendants Alcon*
*Entertainment, LLC, Imagine*
*Entertainment, LLC, Good Lie*
*Productions, LLC, Black Label*
*Media, LLC, Reliance Big*
*Entertainment, (US), Inc., and*
*Margaret Nagle*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served counsel for the opposing party with a copy of the within and foregoing **Memorandum of Law in support of Defendants Alcon Entertainment, LLC, Imagine Entertainment, LLC, Good Lie Productions, LLC, Black Label Media, LLC, Reliance Big Entertainment, (US), Inc., and Margaret Nagle's Motion to Dismiss** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Jason W. Graham
Raegan M. King
Graham & Jensen, LLP
17 Executive Park Drive, Suite 115
Atlanta, Georgia 30329

Respectfully submitted this 28th day of April, 2015.

**CRUSER & MITCHELL, LLP**

/s/ William T. Mitchell
**William T. Mitchell**
Georgia Bar No. 513810

Meridian II, Suite 2000
275 Scientific Drive
Norcross, GA 30092
(404) 881-2622 (Phone)
(404) 881-2630 (Fax)

**LOEB & LOEB LLP**

/s/ David Grossman
**David Grossman**
*Pro Hac Vice* Pending

10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
(310) 282-2000 (Phone)
(310) 282-2200 (Fax)

*Attorneys for Defendants Alcon
Entertainment, LLC, Imagine
Entertainment, LLC, Good Lie
Productions, LLC, Black Label
Media, LLC, Reliance Big
Entertainment, (US), Inc., and
Margaret Nagle*

37