**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| FOUNDATION FOR LOST BOYS AND | ) | |
| GIRLS OF SUDAN, INC., NATHANIEL | ) | CIVIL ACTION FILE NO. |
| CHOL NYOK, BOL DENG BOL, GAM | ) | |
| DAY AWINO, EMMANUEL GAI | ) | 1:15-CV-00509-LMM |
| SOLOMON, STEPHEN AKECH KUOL, | ) | |
| LUKA THIIK YAI, GABRIEL GAI | ) | |
| MAGOK, MAKUR MAKUEI ABIAR, | ) | |
| JAMES CHIER MALUAL, ANDREW | ) | |
| MAJOK MARIER, ANGELO AGANY | ) | |
| AKOT, MOSES MATUR CHOL, JAMES | ) | |
| CHOL ACHIBER, MAROL DENG DEU, | ) | |
| KUIR GARANG MARIER, JOHN NUAI | ) | |
| WOUR, JACOB AWENG DEU, JOHN | ) | |
| GARANG DAU, ABRAHAM CHIER | ) | |
| AROP, NGOR KUR MONYOL, PETER | ) | |
| MALOU JOK, DENG MANYANG RIAK, | ) | |
| SANTINO ACHIEK AYOL, DAU GOI | ) | |
| LEEK, ERNEST AKUEI MADUT, JAMES | ) | |
| AJANG YAI, JACOB NYANG ALIER, | ) | |
| GABRIEL GARANG THUCH, JACOB | ) | |
| AKOL KUANY, JACOB DENG MACH, | ) | |
| VICTOR DUANG DENG, ABRAHAM | ) | |
| CHOL MACHOL, ABRAHAM LAAT | ) | |
| DENG, JOHN MANYOK ANYIETH, | ) | |
| DAVID DENG ANYIETH, JOHN | ) | |
| MADING JOK, ABRAHAM GARANG | ) | |
| MAJAK, SANTINO DUT MONYNHIAL, | ) | |
| ABRAHAM BOL KUANY, PETER KUOL | ) | |
| MADING, DENG MACHOT DENG, | ) | |
| MARKO AGUER AYII, MAYOM LAT | ) | |
| MAWUT, SIMON AYUEL DENG, | ) | |
| WILLIAM LUAL DENG, PHILEMON | ) | |
| JUAC GOR, PETER M. ADOL, JAMES | ) | |
| BOL MALIET, ABRAHAM MAJOK | ) | |

1

DENG, ABRAHAM YEL NHIAL,            )
SARAH ABIEI SOLOMON, and            )
ABRAHAM MACH NYOK,                  )
                                    )
       Plaintiffs,              )
                                    )
v.                                  )
                                    )
ALCON ENTERTAINMENT, LLC,           )
IMAGINE ENTERTAINMENT, LLC,         )
GOOD LIE PRODUCTIONS LLC,           )
BLACK LABEL MEDIA, LLC, RELIANCE    )
BIG ENTERTAINMENT (US), INC.,       )
OUTLAW PRODUCTIONS, DEBORAH         )
JELIN NEWMYER, as executrix of the  )
Estate of Robert Newmyer, JEFFREY   )
SILVER, and MARGARET NAGLE,         )
                                    )
       Defendants.              )

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### I.    <u>Introduction</u>

Fifty-four Sudanese refugees of genocide (the "Lost Boys") helped create the script for the film *The Good Lie* by participating in interviews and contributing their life stories and traumatic experiences. They struck a deal with the Defendants. Their script contributions would result in compensation for the good of their people through a non-profit foundation that they would volunteer for and operate.

2

The Complaint details the Defendants' breach of their promises by producing the film *The Good Lie* based upon the Lost Boys' contributions without compensating them or contributing *any* donations raised from the film to their charitable foundation. Defendants first attempted to produce the film without notifying the Lost Boys. Once discovered, Defendants agreed the Lost Boys "absolutely" should be compensated. Now Defendants deny the film is even based on the Lost Boys' life stories and that their contributions to the script were worthless.

In response to the Plaintiffs' allegations, the Defendants have filed a Motion to Dismiss, which makes the incredible claim that the Defendants cannot be held accountable for their misconduct as a matter of law. Defendants' arguments fail because they all either rely on a misstatement of the Complaint's allegations or inapplicable legal propositions. Defendants' Motion should be rejected in its entirety.

## II.   Summary Of The Argument

The Complaint's factual allegations establish that the Defendants breached a valid oral agreement with the Lost Boys. In 2003, the Lost Boys agreed to share their life stories with producer Bobby Newmyer, Outlaw Productions (Newmyer's production company) and screenwriter Margaret Nagle, so they could create a

screenplay and develop a film about the Lost Boys. In exchange, Newmyer, Outlaw, and Nagle agreed to: 1) pay the Lost Boys $55,000; 2) obtain the Lost Boys consent on a final script before producing a movie; and 3) use the film to raise awareness of the South Sudanese refugees' plight, fundraise for the Lost Boys' cause, and direct 100% of the funds raised to a non-profit foundation organized and operated by the Lost Boys. [Compl. ¶ 51].

Through a series of transactions, Alcon Entertainment, LLC, Black Label Media LLC, Reliance Big Entertainment (US) Inc., Imagine Entertainment, LLC, and Good Lie Productions (collectively the "Corporate Defendants") subsequently acquired Nagle, Newmyer, and Outlaw's rights, obligations, and liabilities relating to the screenplay. In 2013, the Defendants breached their agreement with the Lost Boys by creating a film based on the Lost Boys' contributions and life stories without: (1) paying the Lost Boys any money; (2) obtaining the Lost Boys' consent on a final script; and (3) failing to direct *any* charitable donations raised from the film to the Lost Boys' foundation. [Compl. ¶ 215].

In Defendants' motion, they repeatedly cite to an incomplete video recording of a 2013 meeting they had with the Lost Boys to advocate that there was no agreement. But unsworn testimony contained in an incomplete video recording is not only irrelevant at the motion to dismiss stage, it risks confusing the issues. The

4

test to survive a motion under Fed. R. Civ. P. 12(b) (6) is not which version of the facts are more persuasive for "[o]nly a trier of fact can do that, after a trial." *Richards v. Mitcheff,* 696 F.3d 635, 638 (7th Cir. 2012). Indeed, in Georgia, it is for the jury to decide whether parties intended to be bound by an oral agreement. *See e.g., Turner Broadcasting Syst. Inc. v. McDavid, 303 Ga. App. 593 (2010); McKenna v. Capital Resource Partns, IV, L.P.,* 286 Ga. App. 828 (2007); *Danfair Properties v. Bowen,* 222 Ga. App. 425, (1996). Defendants have advanced no legal authority, and there is none, to show that this Court should weigh the facts at the motion to dismiss stage.

Where the Defendants actually address the *legal* basis for the Lost Boys' contract-based claims, Defendants wrongly seek to apply California procedural rules to this diversity action. Similarly, Defendants incorrectly fault the Lost Boys for not anticipating or meeting defenses in their Complaint even though federal pleadings requirements do not require them to do so. *F.D.I.C. v. Briscoe,* 2012 WL 8302215 (N.D. Ga. 2012).

The Complaint also establishes that the Lost Boys may maintain claims under the Copyright Act despite having failed to register their original works. Under well-settled American common law, Defendants may not insulate themselves from legal liability through their own wrongdoing.  *Glus v. Brooklyn*

5

*Eastern District Terminal,* 359 U.S. 231, 232 (1959). This sound rule, known as the doctrine of equitable estoppel, is regularly applied in copyright disputes. *See e.g., Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1977, 188 L. Ed. 2d 979 (2014); *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 43-44 (1st Cir. 2003); *Legislator 1357 Ltd. v. Metro-Goldwyn-Mayer, Inc.*, 452 F. Supp. 2d 382, 391 (S.D.N.Y. 2006). It applies here and allows the Lost Boys to maintain copyright claims since the only reason they have not registered their copyright is because Defendants have prevented them from doing so.

The Defendants' remaining objections hinge on their improper challenge to the veracity of the Complaint's allegations. Where the allegations of the Complaint are taken as true—as they must be at the motion to dismiss stage—Defendants' arguments fall flat. *See Randall v. Scott,* 610 F.3d 701, 709-10 (11th Cir. 2010).

### III.   Factual Background

The Complaint contains nearly 50 pages of factual allegations. It would be neither efficient nor appropriate to restate them all in this brief.  For the purposes of this Response, the Lost Boys summarize the allegations most salient to the Defendants' arguments.

The Defendants in this case "used the life stories of fifty-four Sudanese refugees of genocide to produce the recently released film *The Good Lie*."

[Compl. ¶ 1].  Robert Newmyer, the deceased former producer and a partner with Outlaw Productions, met Plaintiffs Gam Day Awino, Gabriel Gai Magok, and Nathaniel Chol Nyok in 2002 while they were working as extras in the film *Tears of the Sun*.  [*Id.* ¶ 36].  After Mr. Awino, Mr. Magok, and Mr. Nyok told Mr. Newmyer about some of their experiences in South Sudan, he responded: "We can make this into a movie."  [*Id.* ¶ 37].

In 2003, Margaret Nagle, a screenwriter, and Mr. Newmyer traveled to Atlanta to meet with the Lost Boys.  [*Id.* ¶ 41].  After Ms. Nagle and Mr. Newmyer began interviewing them, Mr. Awino intervened and insisted that they reach an agreement before the interviews continued. [*Id.* ¶ 42]. In response, Newmyer and Nagle promised to: pay the Lost Boys $55,000; "not allow the script to be used for a film unless and until the Lost Boys consented after reaching a compensation agreement with the future filmmakers and studios"; use the "Lost Boys' stories as a catalyst to raise funds for a new foundation to be organized and operated by" the Lost Boys; and direct 100% of the funds raised to that foundation.  [*Id.* ¶¶ 43-45]. The Lost Boys accepted the offer and began performing their end of the agreement by continuing with the interviews and assisting with the creation of the script.  [*Id.* ¶ 47].

Ms. Nagle and Mr. Newmyer eventually interviewed each of the 54 Lost Boys during their trip to Atlanta in 2003. They also conducted several follow-up interviews, including three further conversations with Mr. Awino who provided further details about his story that were incorporated into the screenplay. [*Id.* ¶ 55].

Thereafter, Nagle and Outlaw Productions contracted with Paramount Pictures Corporation ("Paramount") without the Lost Boys' knowledge or consent. Under this agreement, Paramount paid Nagle and Outlaw Productions in exchange for their rights to the screenplay, but never compensated the Lost Boys for their original contributions to the screenplay. [*Id.* ¶ 69].

Reliance Big Entertainment, Inc., Imagine Entertainment, LLC, Alcon Entertainment, LLC, Black Label Media, LLC, and Good Lie Productions LLC subsequently purchased the production rights to the screenplay. [*Id.* ¶¶ 70-74]. During the various purchases, these entities were aware of and assumed the rights, obligations, and responsibilities of Nagle, Outlaw, and Newmyer under their agreement with the Lost Boys. [*Id.*] Once again, however, the Lost Boys were not compensated.

The filming in Atlanta began in 2013, without anyone contacting the Lost Boys to negotiate their compensation pursuant to the original terms of the

agreement. [*Id.* ¶ 76]. The Lost Boys eventually learned of the film and the use of a revised screenplay through some of the film's extras. [*Id.* ¶¶ 77-82].

At an April 15, 2013 meeting with the Lost Boys, Molly Smith and Karen Sherwood (of Black Label Media and Imagine Entertainment, respectively) acknowledged their responsibilities under the original agreement and offered a portion of the film's proceeds to a scholarship fund. [*Id.* ¶¶ 85-88]. After negotiations regarding compensation broke down, Defendants cut the Lost Boys out and stated that the film was not even based on the Lost Boys' personal stories. [*Id.* ¶ 94].

## IV.   **Legal Standard**

As a first step in evaluating a motion to dismiss a complaint under *Ashcroft v. Iqbal* and *Bell Atlantic v. Twombly*, "the district court should assume, on a case-by-case basis, that well pleaded factual allegations are true and then determine whether they plausibly give rise to an entitlement to relief." *Randall,* 610 F.3d 701, 709-10 (11th Cir. 2010). Thus, a complaint may survive a motion to dismiss "even if it is 'improbable' that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely 'remote and unlikely.'" *Hays v. Page Perry, LLC,* 26 F.Supp.3d 1311 (N.D. GA 2014) (quoting *Bell Atlanta v. Twombly,* 550

9

U.S. 544, 556 (2007). "Generally, notice pleading is all that is required for a valid complaint." *Hays,* 26 F.Supp.3d at 1316.

Further, "[t]he Eleventh Circuit has held that '[g]enerally, the existence of an affirmative defense will not support a motion to dismiss.'" *F.D.I.C.,* 2012 WL 8302215 (quoting *Brown v. One Beacon Ins. Co.,* 317 F. Appx 915, 916-17 (11th Cir. 2009). Indeed, as Judge Easterbook explained, "[j]udges should respect the norm that complaints need not anticipate or meet potential affirmative defenses." *Richards v. Mitcheff,* 696 F.3d 635, 638 (7th Cir. 2012). Defendants' motion fails as a matter of law.

## V.    Argument And Citation Of Authority

**1. Plaintiffs have adequately alleged contract claims (Counts I; IV; V; VII; IX-X; XV-XVI against Defendants.**

A.    *Georgia law applies to the Lost Boys' contract claims and it allows them to sue an estate.*

Defendants first argue that the statute of limitations for the Lost Boys contract-based claims expired in 2006 (one year after Newmyer died) under two different California statutes: Cal. Prob. Code § 7051 and Cal. Code Civ. P. § 366.3. [Motion to Dismiss Br. At 6-7]. This argument fails, however, because Georgia law governs this diversity dispute.

Federal courts sitting in diversity apply the forum state's choice-of-law rules. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 135 F.3d 750, 752 (11th Cir. 1998). Georgia (unlike California), follows the First Restatement of Conflicts of Laws: *lex loci contractus* for contract claims; *lex loci delecti* for tort claims; and *lex fori* for procedural or remedial questions. *Lloyd v. Prudential Sec. Inc.,* 211 Ga. App. 247 (1993). Under the doctrine of *lex fori*, procedural or remedial rules governing common law claims are controlled by the forum state's law. *Id.*

Here, the *lex fori* doctrine requires that Georgia's four-year statute of limitations governs the Lost Boys oral contract claims. In particular, Georgia courts recognize that state statutes of limitations are inherently procedural as they "look only to the remedy." *Lloyd,* 211 Ga. App. 247; *see also, Hill v. Fordham,* 186 Ga. App. 354, 357 (1992). Accordingly, California's statute of limitations does not apply to this lawsuit.

Instead, under Georgia's applicable statute of limitations, the Lost Boys' contract-based claims are timely. Under O.C.G.A. § 9-3-25, the statute of limitations for the Lost Boy's contract-based claims only began running after Defendants breached the contract by making the film the "Good Lie": without first obtaining the Lost Boys consent; without using the film to fundraise for a

charitable foundation organized and operated by the Lost Boys; and without directing 100% of the funds raised to that foundation.

Finally, Defendants' incorrectly argue that the Lost Boys may not maintain a cause of action against a deceased party under Georgia law. [Motion to Dismiss Brief at 11-12]. Defendants premise this entire argument on a line of case law in which one party died during a lawsuit and the opposing party failed to amend its complaint to bring its claims against the administrator of the deceased party's estate. *See e.g., Cox v. Progressive Bayside Ins. Co.*, 316 Ga. App. 50, 51 (2012) (where plaintiff knew the defendant died following the filing of his complaint and failed to file motion for substitution); *Clark v. Masters*, 297 Ga. App. 794, 794 (2009) (plaintiff died during proceedings, but failed to substitute a proper party prior to filing of appeal); *Mathews v. Cleveland*, 159 Ga. App. 616, 617 (1981) (acknowledging that the administrator of the estate of a plaintiff can be substituted as the real party in interest).

None of these cases have any application to this lawsuit. Newmyer predeceased this lawsuit and the Lost Boys have not even named him as a Defendant. Instead, they properly asserted their breach of contract claims against Newmyer's wife, the executrix of his estate. *Gordon v. Walker*, 224 Ga. App. 861, 861 (1997) (administrator of husband's estate was real party in interest and proper

12

party to claim); *see also Leonard v. Cesaroni,* 98 Ga. App. 715 (1958) (noting that the four-year statute of limitations for oral contract claims is tolled for one year following the qualification of an executor).

      B.    *Plaintiffs' adequately pled their claims were assigned properly.*

Defendants incorrectly argue that the Lost Boys contract-based claims should be dismissed because they allege that those claims were "'irrevocably assigned' to the Foundation for Lost Boys and Girls of Sudan, Inc., but they do not allege, or attach, a written assignment." [Motion to Dismiss Br. At 12]. Defendants' argument fails factually and legally.

Factually, Defendants' argument fails because the each individual Plaintiff assigned their interest to the Foundation in writing. [See Graham Dec. ¶ 2 (attached hereto as Exhibit A)]. Legally, Defendants' argument confuses the Lost Boys' pleading burden. For while federal pleading standards require complaints to contain plausible allegations, the law is equally clear that a plaintiff need not anticipate and negate potential defenses to their legal theories. *See e.g., Brown,* 317 F. Appx at 916-17; *Kensu v. Warden,* Case no. 12-11877, 2013 WL 1774637 at * 5 (E.D. Mich Apr. 25, 2013); *La Grasta v. First Union Sec. Inc.,* 358 F.3d 840, 845 (11 Cir. 2004); *Lesti v. Wells Fargo Bank, N.A.,* 960 F.Supp.2d 1311 (M.D. Fla 2013); *Richards,* 696 F.3d at 638 (7 Cir. 2012).

*Croteau v. National Better Living Ass'n, Inc.,* 290 F.R.D. 521 (D. Mont 2013), a breach of contract action where the district court rejected essentially the same argument raised here by the Defendants, is instructive. The defendants in *Croteau* moved to dismiss the plaintiff's contract claims under the parol evidence rule arguing the "[p]laintiffs have not pled facts surrounding a written agreement . . . ." *Id.* at 532. In rejecting the argument, the court noted:

> "[d]efendants' argument regarding the applicability of the parol evidence rule to bar [p]laintiffs' claim is a defense . . . and '[i]nvocation of defenses in a motion to dismiss under 12(b)(6) does not support dismissal because plaintiffs need not anticipate and attempt to plead around potential defenses. Complaints need not contain *any* information about defenses and may not be dismissed for that omission."' *Id.* (quoting *Nw. Co. v. Econ. Res. Group, Inc.,* 2008 WL 2532206 at 5 (D. Mont. 2008)).

Likewise, the Lost Boys are not obligated to specifically allege that their assignment was in writing. Under *Iqbal* and *Twombly,* the Lost Boys adequately pled that their individual claims were assigned properly to the Foundation.

C.   *The Lost Boys have pled sufficient facts to establish a breach of contract claim.*

The Lost Boys have pled sufficient facts demonstrating that they had an enforceable oral agreement with the Defendants. Georgia courts routinely enforce oral contracts even when they involve complex terms. *See Turner Broadcasting Syst., Inc. v. McDavid,* 303 Ga. App. 593, 607 (2010) (collecting cases). The

14

relevant test in determining an oral contract's validity is only "whether [the oral contract] is expressed in language sufficiently plain and explicit to convey what the parties agreed upon." *Fay v. Custom One Homes, LLC*, 276 Ga. App. 188, 190 (2005).

Here, the Lost Boys alleged five specific elements: (1) the Lost Boys would share their life stories via interviews; (2) Nagle would use the stories and interviews to create a screenplay; (3) Outlaw Productions, Newmyer, and Nagle would pay the Contributing Lost Boys a down payment of $55,000 for their life stories; (4) no film would be produced from the screenplay without consent from the Contributing Lost Boys and an agreement as to compensation; and (5) 100% of all charitable donations raised from the film would be directed solely to a non-profit foundation organized and operated by the Lost Boys.   Under applicable Georgia law, this Joint Venture Agreement[1] is "sufficiently definite to be enforced." *Fay*, 276 Ga. App. at 191.

In their Motion to Dismiss, the Defendants argue that the video-taped settlement conversation referenced in the Complaint somehow forecloses Plaintiffs' claims; that the Complaint's allegations are not credible in light of a video attached to the Defendants' brief. [Motion to Dismiss Br. 16-18].

---

1 Capitalized terms in this brief shall have the same defined meanings as in the Complaint.

Defendants, of course, do not cite any legal authority holding that the Court may weigh the credibility of facts alleged in the Complaint, conclude the allegations are baseless and dismiss the case. Indeed, Defendant's interpretation of the video is exactly the type of evidence that is out of bounds at this litigation stage. For the law is clear that "[a] motion to dismiss does not test the merits of a case." *Young Apartments, Inc. v. Town of Jupiter, FL,* 529 F.3d 1027, 1037 (11th Cir. 2008). Thus, the Court should recognize Defendants pre-discovery references to unsworn testimony for what they are: an improper attempt to advocate their interpretation of the parties' agreement.

Even assuming *arguendo* the Court could consider, the out of context "we didn't have a final agreement" comments referenced in Defendants' brief, the statement can be explained by further parol evidence. For example, the oral contract sued upon is not an agreement to agree in the future, but rather an agreement that no movie would be made from the collective efforts of plaintiffs and defendants without a definitive agreement between the parties. The terms are clear and precise: no agreement, no movie from the script.

Defendants also challenge the Complaint's contract allegations by asserting that the Complaint "acknowledges that no amount of money was ever agreed upon." [Motion to Dismiss Br. at 15]. In making that argument, Defendants

16

overlook that the Lost Boys pled that "Outlaw Productions, Newmyer, and Nagle would pay the Contributing Lost Boys $55,000 for their life stories." [Compl. ¶ 55].

Where Defendants actually address the *legal* basis for the Lost Boys oral-contract claims, the Defendants wrongly argue that the parties' agreement is fatally vague because they did not agree on a dollar value of charitable contributions for the screenplay.  [Defendants' Motion to Dismiss, p. 15]. Georgia law, however, "does not favor the destruction of contracts on grounds of uncertainty." *Fay,* 276 Ga. App. at 191; *see also, McElvaney v. Roumelco LLC et al,* 2015 WL 1432515 (March 30, 2015). Indeed, public policy prohibits a contract's destruction on uncertainty grounds where the contracting parties' intentions are capable of being determined from the circumstances under which the contract was made. *Bulloch South, Inc. v. Gosai,* 250 Ga. App. 170 (2001). And where one party disputes a contract's existence, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. When such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury." *Wright v. Cofield,* 317 Ga. App. 285, 287-288 (2012).

17

Accordingly, courts routinely uphold oral contracts that contain compensation agreements that are based solely on a percentage of future unknown revenue. *See e.g., Fay v. Custom One Homes, LLC*, 276 Ga. App. 188, 191 (2005) (verbal promise for 30% of the value of an unappraised office tower); *Thompson v. Kohl,* 216 Ga. App. 148 (1994) (verbal agreement for 10% of corporate stock from an unformed corporation).

*Thompson v. Kohl,* a breach of contract action in which the Court upheld an oral agreement in which a party agreed to exchange his labor for 10% of the stock in an unformed corporation is instructive.  216 Ga. App. 148 (1994). The defendant in that case, Thompson, was the son of an automobile dealership proprietor who desired to start his own dealership. To that end, he entered into an agreement with one of his subordinates, Kohl, whereby Kohl agreed to work towards increasing the profitability of the dealership to allow Thompson to purchase it from his father. In exchange, Thompson agreed that Kohl would be entitled to 10% of the stock in the dealership in the event that Thompson acquired that dealership. *Id.*

After Thompson fired Kohl and started his own dealership, Kohl filed a breach of contract action, which Thompson moved the court to reject as a matter of law. In support of his motion, Thompson argued that his oral promise to provide Kohl with 10% of the stock of an unformed corporation was too vague and

18

uncertain to be enforceable. The appellate court affirmed the trial court's rejection of Thompson's motion, holding: "the agreement in the present case is to transfer a minimum of 10 percent of corporate shares to Kohl and Kohl seeks the minimum of 10 percent. **That is a definite amount**." *Id.* at 150 (emphasis added).

Defendants argue here, in an assertion almost identical to that made by the defendant in *Thompson v. Kohl,* that the Lost Boys' agreement was impermissibly vague because the parties agreed that 100% of all charitable funds would go to a foundation organized and operated by the Lost Boys if a film were to be made.  As in *Thompson,* Defendants vagueness argument fails as a matter of law: 100% of all charitable funds raised from the film is a definite amount. A foundation created by and controlled by the Lost Boys is a definite term, even if not yet formed like the corporation in *Thompson v. Kohl.*

Even assuming, *arguendo,* that this Court were to conclude that the term regarding compensation for the screenplay was somehow indefinite, courts applying Georgia contract law have repeatedly made clear that "parties to a contract can agree to bind themselves by that contract to negotiate in good faith and to work out . . . some terms that remain open."  *See e.g., Bommer v. Reynolds*, 465 Fed. App'x 876, 879-80 (11th Cir. 2012). The Defendants acknowledge in the same inadmissible (at this stage) transcript they rely upon that the parties could not

have agreed to exact compensation at the time of the agreement because those terms would require the participation of third party studios not yet identified. Accordingly, the agreement was to negotiate with those third parties together and not make a movie until an agreement among all parties was reached. The parties to the 2003 Joint Venture agreement formed a valid, enforceable oral contract, and they were allowed to agree to negotiate in good faith as to the open term. Accordingly, the Court should deny Defendants' Motion as to their breach-of-contract claims.

### 2.      Plaintiffs Have Adequately Pled Their Copyright Claims

#### A.      The Lost Boys May Maintain Their Copyright Claims Despite Not Registering Their Original Work.

As a preliminary matter, this Court maintains subject matter jurisdiction over the Lost Boys' copyright claims despite their acknowledged inability to satisfy the registration requirement of 17 U.S.C.A. § 411(a). *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 168-69 (2010). As the Supreme Court has recognized, section 411(a) of the Copyright Act "imposes a type of precondition to suit" that is non-jurisdictional in nature. *Id.* at 167. Consequently, the Court is able to reach the question of whether the requirement applies to bar the Lost Boys' claims.

The Copyright Act's plain language prevents a party from bringing a copyright claim unless he has first registered his work. Implicitly, therefore, the

20

Act presupposes that one who has created an original work can register it. But just as "a sign forbidding animals in a restaurant should not be interpreted to ban humans," the Act's registration requirement should not be interpreted to prevent a plaintiff from bringing suit if he has been prevented from registering his original work. [*See generally,* Richard A. Posner, "Reflections on Judging," at 121].

This makes sense for it is well-settled under the equitable estoppel doctrine that a party may not insulate itself from liability through its own wrongdoing. *Glus,* 359 U.S. 232. The doctrine is regularly applied in copyright disputes. *See e.g., Petrella*, 134 S. Ct. 1962, 1977, (2014); *John G. Danielson, Inc*., 322 F.3d 43-44; *Legislator 1357 Ltd.*, 452 F. Supp. 2d at 391. It applies here and allows the Lost Boys to sue under the Copyright Act despite having not registered their copyright.

Here, the Lost Boys are incapable of registering an otherwise valid copyright because the Defendants have prevented them from doing so. To obtain a copyright registration, a copyright owner must deliver a registration application, the appropriate fee, and **a deposit of copies.** 17 U.S.C.S. § 408 (a).The Lost Boys cannot comply with this final requirement — Defendants have sole possession of the only recording of the 2003 Interview. In other words, the Lost Boys lack a registration certification due solely to Defendants' actions.

21

One of the remedies requested by the Plaintiffs is for this Court to order the Defendants to turn over the original recordings so that Plaintiffs can register their copyright.  Accordingly, if this Court requires the Lost Boys to satisfy the registration requirement as the cost of admission then Defendants would be able to "to rely on [their] own wrongful act, as against those affected by it but who have not participated in it to . . . defeat a remedy, which except for this misconduct would not be available. *Curry v. A.H. Robins Co.,* 775 F.2d 212, 218 (7th Cir. 1985).  In sum, the Court should apply the doctrine of equitable estoppel to allow the Lost Boys to maintain their copyright claims.

**B.     Plaintiffs Have Properly Stated A Claim for Declaratory Judgment      As To Their Copyright Claims**

           1.     *The Complaint sufficiently alleges work that has been fixed in a tangible medium of expression.*

Plaintiffs' copyrighted work has been fixed into two tangible mediums of expression: the 2003 recording of their interviews, and in the original draft of the screenplay that contained elements from their interviews.   Under the Copyright Act, a work is copyrightable if it is "fixed in any tangible medium of expression." 17 U.S.C.S § 102(a).    "[F]or statutory purposes, any medium capable of embodying a work for more than a transitory period is a 'tangible medium."' [Nimmer on Copyright § 2.03 n. 30 (noting that radio is a tangible medium)].

22

Thus, the Copyright Act identifies those works that are copyrightable as works of authorship, which include "audiovisual works."  17 U.S.C. § 102(a)

Here, the Lost Boys allege that the 2003 meeting was tape recorded. [Compl., ¶ 146].  A tape recording qualifies as a fixed medium. In their brief, Defendants merely challenge the Lost Boys' allegations and then argue "[b]ecause there is no fixation in a tangible medium of expression, there is no copyright claim of any sort to be asserted." [Motion to Dismiss Br. at 20].   Because the Lost Boys have pled plausible facts in support of the fixation element, however, this Court should deny Defendants' Motion as to the copyright claims.

2.   *The 2003 recorded interview qualifies as an original work of authorship*

Defendants' argument that the Lost Boys' participation in the 2003 interviews cannot qualify as an original work of authorship also misconstrues the Complaint's allegations.  The Lost Boys are not claiming copyright protection for merely their "answers" in the interview, but rather for their participation in a joint-creative process that spawned the screenplay for *The Good Lie*. That joint-creative process qualifies as an original work of authorship under the Copyright Act.

The  Copyright  Act  protects  "original  works  of  authorship."   17 U.S.C. § 102(a).  When assessing the originality requirement, "all that must be shown is that the work 'possesses at least some minimal degree of creativity' . . . to

be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." *Durkin v. Platz*, 920 F. Supp. 2d 1316, 1340 (N.D. Ga. 2013) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)). Furthermore, "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547 (1985).

Here, the Lost Boys have pled sufficient facts demonstrating their participation in the 2003 interviews involved more than that "minimal degree of creativity." *Durkin*, 920 F. Supp. 2d at 1340. The participants were not merely relaying historical facts in a rote manner, but were telling their life stories in a way that would be emotionally gripping and educational. They were shaping their stories so that they could be conducive to a film screenplay. *Harper & Row*, 471 U.S. at 547.

The case of *Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 808 F. Supp. 2d 634, 637 (S.D.NY. 2011), is particularly instructive. There, the court concluded that a sound recording of a conference call that included "senior executives' extemporaneous commentary on the company's health and future prospects" qualified as an original work of authorship. *Id.* at 637. In reaching that holding, the district court stated that "[t]he vast majority of works made the grade

24

[for originality] quite easily, as they possess some creative spark." *Id.* (internal quotations omitted).  While acknowledging that the executives relied on facts and figures, the district court concluded that "there are protectable, creative elements in the senior executives 'manner of expression, [their] analysis or interpretation of events, the way [they] structure[d] [their] material and marshall[ed] facts, [their] choice of words, and they emphasis [they] g[a]ve[] to particular developments.'" *Id.*

Here, as noted above, the Lost Boys' contributions to the interviews involved much more than "some creative spark."  *See Swatch Group*, 808 F. Supp. 2d at 637.  They were not merely making factual statements, but were exercising creativity in how they structured their stories, how they chose their words, and how they emphasized particular developments in their lives in Sudan.  *See id.*

The cases Defendants cite are not relevant or on point.  *Falwell v. Penthouse Int'l, Ltd.*, 521 F. Supp. 1204 (W.D. Va. 1981), concerns a state common-law claim, not a claim under the Copyright Act.  Further, the Lost Boys' are not seeking to copyright "[their] ideas and opinions" as was the case in *Falwell*. Instead, they seek copyright protection for their stories.  The second case, *Taggart v. WMAQ Channel 5 Chicago*, Case No. 00-4205-GPM, 2000 WL 1923322 (S.D. Ill. Oct. 30, 2000), is similarly distinguishable, as Plaintiffs are not merely seeking

copyright protection for "ideas, opinions, and facts," but for their stories and creative contributions to the 2003 interview process and the resulting screenplay. *Harper & Row*, 471 U.S. at 547.

      3.      *The Lost Boys have established themselves as joint authors*

The Lost Boys have pled sufficient facts to show that, at the time that they reached the agreement with Nagle, Newmyer, and Outlaw Productions, all parties intended for them to be joint authors of the 2003 interviews and the ultimate script developed from the interviews. In arguing against joint authorship, Defendants have alleged that the Lost Boys needed to plead facts showing that they discussed creating an audiotape or videotape with Ms. Newmyer.  [Motion to Dismiss Br. 23).  As noted, however, there is no requirement for the Lost Boys to anticipate and counter defenses at the pleading stage.

The Copyright Act provides that "authors of a joint work are co-owners of the copyright in the work." 17 U.S.C. § 201(a). The Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. To establish joint authorship, courts traditionally require a showing of "(1) intent to create a joint work; and (2) contribution of independently copyrightable material." *Janky v. Lake County Convention and Visitors Bureau*,

576 F.3d 356, 362 (7th Cir. 2009). Moreover, "the intent prong does not have to do with the collaborators' intent to recognize each other as co-authors for purposes of copyright law; the focus is on the parties' intent to work together in the creation of a single product, not the legal consequences of that collaboration." *Id.*

Defendants here have not contested the "independently copyrightable material" prong, but instead rely on the alleged lack of intent. [Motion to Dismiss Brief at 23]. The Lost Boys have pled several facts supporting an intent for joint ownership, including their joint agreement with Newmyer, Nagle, and Outlaw Productions that they would tell their life stories in preparation of a film screenplay, and that they would need to agree and be compensated before any film would be made from the screenplay. [Compl. ¶¶ 44-51]. Defendants' allegations regarding the lack of a discussion of any audiotape or videotape of the interviews do not overcome these pleaded facts. *See Janky*, 576 F.3d at 362. It is clear from the allegations of Plaintiffs' Complaint that both the Contributing Lost Boys and their counterparties to the Joint Venture Agreement saw each other as collaborators during the interview process. Furthermore, the interview itself involved a natural collaboration between the questions asked by Defendants and the Plaintiffs' creative, storytelling-style answers. *See id.* Accordingly, the Court should reject Defendants' contentions regarding joint authorship.

**C.     The Lost Boys' Claims for Unjust Enrichment and Quantum Meruit Are Not Preempted by the Copyright Act.**

Defendants advance the single argument of preemption in support of their Motion to Dismiss Counts VI (Conversion); XI (Unjust Enrichment) and XII (Quantum Meruit). Motion to Dismiss Br. at 25-27. The Copyright Act only preempts state actions based on the exclusive rights found in the Copyright Act or equivalents of the Act. *Foley v. Luster,* 249 F.3d 1281, 1285 (11 Cir. 2001). When considering preemption, Courts apply the extra element test—if a state law claim that requires proof of an additional element "instead of or in addition to the acts of reproduction, performance, distribution or display . . . then the right does not lie within the general scope of copyright and there is no preemption. *Id.*

Under this test, the Lost Boys' claim for unjust enrichment is not preempted by the Copyright Act. The Lost Boys have only asserted that alternative claim to seek redress for Defendants failure to compensate them for services rendered if the Court dismisses their contract-based claims. *See Cochran v. Ogletree,* 244 Ga. App. 538 (2000) ("[t]he theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in unjust enrichment unless compensated"). Indeed, courts routinely hold that claims for unjust enrichment are not preempted. *See e.g., Telecomm Technical Services, Inc. v. Siemens Rolm Communications, Inc.,* 66 F.Supp.2d 1306, 1326 (N.D. Ga. 1998);

28

*Schuchart & Assocs., Prof'l Eng'rs Inc. v. Solor Serve Corp.,* 540 F.Supp. 928, 945 (D.C. Tex 1982).

Likewise, the Copyright Act does not prevent the Lost Boys' quantum meruit claim as that claim does not require copying or copyrightability. Instead, the elements of a claim for quantum meruit are: (1) Plaintiff's performance of services valuable to Defendant; (2) either at the request of Defendant or knowingly accepted by Defendant; (3) Defendant's receipt of which without compensating Plaintiff would be unjust; and (4) Plaintiff's expectation of compensation at the time of the rendition of the services. *See Synergy Worldwide, Inc. v. Long, Haymes, Carr, Inc.*, 44 F. Supp. 2d 1348, 1358 (N.D. Ga. 1998). Here—where the Lost Boys have only alleged their quantum meruit claim based on their reasonable expectation of compensation for services rendered—their claim exists wholly independent of any copyright rights. Thus, their claim is not preempted.[2]

### D.   The Lost Boys Have Adequately Pled a Right Of Publicity Claim

The Complaint pleads sufficient facts to support Plaintiffs' right of publicity claim.  In moving to dismiss this claim, Defendants do not address the facts as pled

---

[2] The Lost Boys' alternative conversion claim is not preempted to the extent the Court holds that the Lost Boys' personal stories are not copyright protectable. *Telecomm Technical Services.,* 66 F.Supp.2d 1326 ("The Court agrees with defendant that this [preemption] argument is without merit with respect to the portions . . . which relate to such matters as the alleged theft of items not covered under any copyright, such as customer lists.").

in the Lost Boys' Complaint. Instead, Defendants have attempted to plead their own version of the facts.

For example, Defendant's contend that the Lost Boys have merely alleged the use of "anecdotes" in the film.  But nowhere in the Complaint is there any such statement.  Rather, the Lost Boys contend that Defendants have appropriated their likenesses for commercial gain.  Indeed, the Complaint alleges that Defendants have done so in *The Good Lie* through the use of characters and scenes based almost entirely on stories from the 2003 interviews.

The common law claim for right of publicity, or commercial appropriation, protects "the plaintiff's exclusive use of his or her name and likeness as an inherent aspect of his [or her] *identity*." *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 752 (2013) (emphasis in original) (internal quotations and citations omitted). Furthermore, "[t]he right of publicity does not require that appropriations of identity be accomplished through particular means to be actionable." *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1398 (9th Cir. 1992).  The Court in *White* applied a broad view of the right to publicity claim, noting that a person's actual, real image does not have to be used for a claim to lie.  *Id.*

### E.   The Lost Boys Have Properly Pled An Alternative Claim For Promissory Estoppel.

The Lost Boys have alleged, in the alternative, a promissory estoppel claim

30

if this Court or a jury decide against their contract claims.  In response to this claim, Defendants rely entirely on unsworn statements contained in a video and their own interpretation of that testimony. As noted previously, Defendants' interpretation is irrelevant at this stage. The Lost Boys have alleged several promises that were made by Defendants. The Lost Boys detrimentally and reasonably relied on these promises by participating in the interviews and telling their life stories to the Defendants.   *See* O.C.G.A § 13-3-44(a); *Sun-Pacific Enterprises, Inc. v. Girardot*, 251 Ga. App. 101, 106 (2001) ("[p]romissory estoppel is an equitable doctrine designed to prevent the intricacies and details of the law from frustrating the ends of justice").  Accordingly, this Court should deny Defendants' motion as to Plaintiffs' promissory estoppel claim.

### F. Plaintiffs Have Stated A Claim For Fraudulent Inducement.

The Complaint sufficiently pleads facts as to every element of their claim for fraudulent inducement, and Defendants cannot seek dismissal of the claim based on their view that the Lost Boys' factual allegations are incorrect.  Because the Lost Boys' allegations' veracity is not assessed at the motion to dismiss stage, this Court should deny the Defendants' Motion as to the fraudulent inducement claim.

The elements of a fraudulent inducement claim are (1) a false representation or omission of material fact; (2) scienter; (3) intention to induce the party claiming

31

fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages.  *See*
*Worsham v. Provident Companies, Inc.*, 249 F. Supp. 2d 1325, 1331 (N.D. Ga.
2002).  "Although actionable fraud cannot be based on statements and promises as
to future events, there is an exception to this proposition, which is that fraud may
be predicated on a promise made with a present intention not to perform."
*Kirkland v. Pioneer Mach, Inc.*, 243 Ga. App. 694, 695 (2000).  Importantly, "[a]s
a general rule, the issue of whether a party's reliance is reasonable and justified is a
question of fact to be determined by the factfinder."   *Breckenridge Creste*
*Apartments, Ltd. v. Citicorp Mortg., Inc.*, 826 F. Supp. 460, 466 (N.D. Ga. 1993).

Here, the Lost Boys have alleged specific, particular facts as to each
essential element of their fraud claim, and have shown more than enough to satisfy
the standard under Rule 9(b).  Defendants expend great effort in their brief to show
why they believe the Lost Boys' allegations are wrong, but they do not argue the
allegations are "implausible" or not stated with particularity.  As noted above, the
crucial issues of whether the Lost Boys' reliance on Defendants' promises was
reasonable and justified should not be determined at this stage, but by a factfinder
at trial.  *See Breckenridge*, 826 F. Supp. at 466.  Furthermore, Defendants simply
mischaracterize the alleged statement in 2013 that they "did not reach an
agreement," which was not in reference to the entire Joint Venture Agreement, but

as to the element regarding compensation for the screenplay.  The Court should not credit a mischaracterized and biased version of the facts in a Motion to Dismiss. The question should be whether the Complaint states plausible claims. Accordingly, this Court should deny the motion to dismiss as to the fraud claim.

### G.  The Lost Boys Have Adequately Pled Claims Against All Corporate Defendants.

Defendants argue that the Lost Boys have not established any facts to support liability on any of their claims against the Corporate Defendants. The Court may resolve this portion of Defendants' argument by a straightforward application of the law of assignments.  Defendants have acknowledged that the Corporate Defendants received certain rights to the screenplay for a production of a film.  Thus it is plausible that they also received Nagle, Newmyer, and Outlaw Productions' obligations to the Contributing Lost Boys.

Under Georgia law, "an assignee 'stands in the shoes' of the assignor and obtains no greater rights than the assignor possessed at the time of the assignment." *Southern Telecom, Inc. v. TW Telecom of Georgia L.P.*, 321 Ga. App. 110, 114 (2013). The Corporate Defendants, as assignees, stand in the shoes of Newmyer, Nagle, and Outlaw Productions.  Accordingly, they cannot claim greater rights than the assignors possessed, which is what they would achieve if the claims against the Corporate Defendants were dismissed.  *See Id; See also Compl.* ¶ 87

33

("The most important thing that was said here today was you asked a question, 'Do you feel we should be compensated for your story?' And, the answer I can say, because it is my company and my studio, is absolutely.") Therefore, the Court should deny Defendants' Motion as to all claims against the Corporate Defendants.

## VI.  <u>Conclusion</u>

For the reasons set forth above, the Court should deny the Defendants' Motion to Dismiss.

Respectfully submitted this 5th day of May, 2015.

**GRAHAM & JENSEN, LLP**

<u>/s/ Jason W. Graham</u>
Jason W. Graham
Ga. Bar No. 304595
T. Brandon Welch
Ga. Bar No. 152409
bwelch@grahamjensen.com
Zachary Lewis
Georgia Bar. No. 689146
zlewis@grahamjensen.com

Graham & Jensen, LLP
17 Executive Park Drive, Suite 115
Atlanta, Georgia 30329
Phone: (404) 842-9380
Fax: (678) 904-3110

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

FOUNDATION FOR LOST BOYS AND )
GIRLS OF SUDAN, INC., NATHANIEL )   CIVIL ACTION FILE NO.
CHOL NYOK, BOL DENG BOL, GAM )
DAY AWINO, EMMANUEL GAI )   1:15-CV-00509-LMM
SOLOMON, STEPHEN AKECH KUOL, )
LUKA THIIK YAI, GABRIEL GAI )
MAGOK, MAKUR MAKUEI ABIAR, )
JAMES CHIER MALUAL, ANDREW )
MAJOK MARIER, ANGELO AGANY )
AKOT, MOSES MATUR CHOL, JAMES )
CHOL ACHIBER, MAROL DENG DEU, )
KUIR GARANG MARIER, JOHN NUAI )
WOUR, JACOB AWENG DEU, JOHN )
GARANG DAU, ABRAHAM CHIER )
AROP, NGOR KUR MONYOL, PETER )
MALOU JOK, DENG MANYANG RIAK, )
SANTINO ACHIEK AYOL, DAU GOI )
LEEK, ERNEST AKUEI MADUT, JAMES )
AJANG YAI, JACOB NYANG ALIER, )
GABRIEL GARANG THUCH, JACOB )
AKOL KUANY, JACOB DENG MACH, )
VICTOR DUANG DENG, ABRAHAM )
CHOL MACHOL, ABRAHAM LAAT )
DENG, JOHN MANYOK ANYIETH, )
DAVID DENG ANYIETH, JOHN )
MADING JOK, ABRAHAM GARANG )
MAJAK, SANTINO DUT MONYNHIAL, )
ABRAHAM BOL KUANY, PETER KUOL )
MADING, DENG MACHOT DENG, )
MARKO AGUER AYII, MAYOM LAT )
MAWUT, SIMON AYUEL DENG, )
WILLIAM LUAL DENG, PHILEMON )
JUAC GOR, PETER M. ADOL, JAMES )
BOL MALIET, ABRAHAM MAJOK )

35

DENG, ABRAHAM YEL NHIAL,      )
SARAH ABIEI SOLOMON, and      )
ABRAHAM MACH NYOK,            )
                             )
      Plaintiffs,      )
                             )
v.                           )
                             )
ALCON ENTERTAINMENT, LLC,     )
IMAGINE ENTERTAINMENT, LLC,   )
GOOD LIE PRODUCTIONS LLC,     )
BLACK LABEL MEDIA, LLC, RELIANCE )
BIG ENTERTAINMENT (US), INC.,  )
OUTLAW PRODUCTIONS, DEBORAH   )
JELIN NEWMYER, as executrix of the )
Estate of Robert Newmyer, JEFFREY )
SILVER, and MARGARET NAGLE,    )
                             )
      Defendants.      )

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

with the Clerk of Court using the CM/ECF system, which will automatically notify

the following attorneys of record:

    William T. Mitchell, Esq.
    Cruser & Mitchell, LLP
    Meridian II, Suite 2000
    275 Scientific Drive
    Norcross, Georgia  30092

36

David Grossman, Esq.
Loeb & Loeb, LLP
10100 Santa Monica Boulevard
Suite 2200
Los Angeles, California 90067

Further, I certify that the foregoing document has been prepared with Times

New Roman 14-Point font, as approved in LR 5.1C.

Respectfully submitted this 5th day of June, 2015.

**GRAHAM & JENSEN, LLP**

/s/ Jason W. Graham
Jason W. Graham
Ga. Bar No. 304595
jgraham@grahamjensen.com
T. Brandon Welch
Ga. Bar No. 152409
bwelch@grahamjensen.com
Zachary Lewis
Georgia Bar. No. 689146
zlewis@grahamjensen.com

Graham & Jensen, LLP
17 Executive Park Drive, Suite 115
Atlanta, Georgia 30329
Phone: (404) 842-9380
Fax: (678) 904-3110

37